## HATTON *et al.* v. JOHNSON *et al.; et vice versa.*
## DAVIS *et al.* v. HATTON *et al.*

1. The court erred in overruling the second ground of the motion to re-commit. The auditor should have made a finding as to the quantity of ore or proportions taken from the several quarters of the lot, and especially the northeast quarter, in which some of the plaintiffs, under the finding of the auditor, had no interest. Such a finding was a necessary element in arriving at the actual amount of money found to be due to these plaintiffs.

(a) Having ruled that it was necessary for the auditor to make a finding as to the quantity of ore taken from the several quarters of the land in order to arrive at the actual amount of money found to be due the several plaintiffs who are legally entitled to recover as part owners of the land, it necessarily follows that the finding of the auditor in favor of the plaintiffs for stated amounts was unauthorized, and it was error not to sustain exceptions to those findings. The final decree based on the arbitrary findings in this respect is also erroneous and must be set aside.

2. The court did not err in refusing to recommit the case on the ground that the auditor should have made a finding in respect to the amount of income tax paid to the Federal Government by defendant Hatton on account of the income received by him as royalty on the ores mined.

3. When the case was previously before this court it was held: "The claim for equitable relief made by two of the petitioners in this case [Mrs. Davis and Mrs. Griffin], in the nature of cancellation of a deed by them, on the ground that its execution had been procured by fraud, is not supported by the allegations of fact in the petition," and "Under the allegations of this petition Hatton had an incontestable right and title to the interests of Mrs. Griffin and Mrs. Davis in the lot of land in question." The judgment was reversed; and at an appropriate stage these plaintiffs offered an amendment to which the defendant Hatton demurred on the ground that the allegations were insufficient, construed in connection with the former allegations, to set out a cause of action. The court overruled the demurrer and allowed the amendment, and Hatton excepted. It is unnecessary for this court to pass upon the assignment of error on the judgment overruling this demurrer, since the final conclusion of the case as to the claims of these plaintiffs renders the question moot. The auditor found that the ancestor under whom these plaintiffs claim an interest in the land conveyed that interest to a third party; that finding was approved by the trial judge, exception was taken thereto, and the judgment is affirmed, as shown in the ninth headnote and corresponding division of the opinion as now decided by this court.

4. The remaining grounds of the motion to recommit do not show that the court erred in overruling the motion.

5. The court did not err in overruling the exception of Hatton to the finding of fact of the auditor as follows: "I find that there has never been any division or partition of lot No. 214 in the 28th district of Sumter County, Georgia, between Mrs. Brooks, Mrs. Johnson, A. N.

Thigpen, and Dr. J. L. Thigpen, the heirs at law of Joshua M. Thigpen and Mrs. Nancy Thigpen."

6. The auditor did not err in finding against the plea to the jurisdiction, filed by the defendant, Republic Mining & Manufacturing Company.

7. Under the pleadings the auditor was not authorized to find a judgment against the Republic Mining & Manufacturing Company jointly with Hatton, as mesne profits for the amount of profits paid by the former to the latter.

8. The motion made in this court to dismiss the bills of exceptions filed by J. L. Johnson et al. (No. 3654) and Mrs. Amie Davis et al. (No. 3655), on the ground that they are independent writs of error not authorized by law, is denied. They are cross-bills of exceptions authorized under the Civil Code (1910), § 6148.

9. The court did not err in overruling exceptions of law and fact to the finding of the auditor as follows: "I find that on September 3rd, 1889, Mrs. J. T. Johnson deeded to A. N. Thigpen the northeast corner of this lot" (referring to lot No. 214 in the 28th district of Sumter County, being the lot in litigation).

10. The court did not err in overruling the motion of Mrs. Davis and Mrs. Griffin to recommit the case to the auditor for a supplemental report, on the ground following, to wit: "The auditor held (in the 16th finding of fact) that it was useless to pass on the issue raised by the attack of these petitioners upon a certain deed dated February 5th, 1913, this ruling being based on the ground that he had found that all the interest of petitioners' predecessor in title, Mrs. F. C. Brooks, has passed out by a certain deed made by Mrs. Brooks and A. N. Thigpen" to third parties, which said deed the auditor found related to the lot of land involved in the litigation.

Nos. 3638, 3854, 3855. January 18, 1924.

Equitable petition. Before Judge Littlejohn. Sumter superior court. January 23, February 5, 1923.

Joshua M. Thigpen died in December, 1864, seized and possessed of lot of land No. 214 in the 28th district of originally Lee County, now Sumter County. There survived him his wife, Mrs. Nancy Thigpen, two sons, J. L. and A. N. Thigpen, and two daughters who became by marriage Mrs. J. T. Johnson and Mrs. F. C. Brooks. Mrs. Nancy Thigpen died prior to the institution of this suit, which seeks an equitable partition. The petitioners are J. L., Judson, A. J. and Amos Johnson, the husband and children of Mrs. Josephine Johnson, deceased; Mrs. Mamie Griffin and Mrs. Amie Davis, the only children of E. J. Brooks, deceased, who was the only child of Mrs. F. C. Brooks; T. L. Thigpen (by guardian), the only child of John A. Thigpen, deceased, who was one of five children of J. L. Thigpen, deceased, a son of Joshua M. Thigpen. A. N. Thigpen was in life at the time the suit was brought. To

the statement of the case appearing in 150 *Ga.* 218 (103 S. E. 233), when it was here formerly, it is necessary to add that subsequently to the decision of this court three amendments to the petition were filed. Two of these amendments (by Mrs. Davis and Mrs. Griffin) were allowed over the objection of defendants, and error is assigned thereon. The auditor found that these plaintiffs had no interest in the land, and therefore these amendments are not reported. By the third amendment the petitioners prayed that they recover from Republic Mining & Manufacturing Co., on account of all ore mined from the land within four years prior to the filing of the suit. The Republic Mining & Manufacturing Company objected to the allowance of the amendment last mentioned. It had also pleaded that it was a body corporate created by the superior court of Floyd County; that it maintained in Floyd County its principal office; that it did not have at the commencement of the suit, and had not since had in Sumter County, an agent or place of business upon whom or at which service of process could be perfected; and that the superior court of Sumter County was without jurisdiction. The auditor found against this plea. He also found that under the terms of the lease between Hatton and the Republic Mining & Manufacturing Company the company was to pay $1 per ton for all ore removed from said land; that the total amount so removed was 25,000 tons, and that the company had paid to Hatton, on January 29, 1917, the sum of $25,000 for all ore taken under said lease.

The auditor found further: that upon the death of Joshua M. Thigpen and his wife, Mrs. Nancy Thigpen, each of their four children, A. N. Thigpen, J. L. Thigpen, Mrs. J. T. Johnson, and Mrs. F. C. Brooks, inherited a one-fourth undivided interest in said lot of land; that there has never been any division or partition of said lot; that on Nov. 3, 1885, A. N. Thigpen made a deed conveying to Mrs. J. L. Johnson the northeast corner of said lot; that on the same date he made a deed conveying to Mrs. F. C. Brooks the northwest corner of said lot; that on May 14, 1886, he made to E. J. Brooks a deed conveying the south half of said lot; that on July 13, 1887, A. N. Thigpen and Mrs. F. C. Brooks made a deed conveying to Americus, Preston & Lumpkin Railroad Company the north half of said lot; that on Sept. 3, 1889, Mrs. J. T. Johnson made to A. N. Thigpen a deed conveying the north-

east corner of said lot; that on Feb. 6, 1913, A. N. Thigpen made to R. D. Hatton a deed conveying the north half of said lot; that Hatton had also acquired by deed the interests of all the heirs of J. L. Thigpen, except that of T. L. Thigpen; that Mrs. J. T. Johnson owned at her death a one-fourth undivided interest in all of said lot, except the northeast corner consisting of 50 acres more or less; that at her death each of her heirs inherited a one-sixteenth undivided interest in the three fourths of said lot, excepting the northeast corner; that Mrs. F. C. Brooks, having joined with A. N. Thigpen in executing the deed dated July 13, 1887, conveying to Americus, Preston & Lumpkin Railroad Company the north half of said lot, owned at her death only an undivided one-fourth interest in the south half, which descended upon her death to her heirs at law, Mrs. Griffin and Mrs. Davis; that whatever title E. J. Brooks acquired to the south half of said lot, under the deed from A. N. Thigpen, descended upon his death to his children, Mrs. Davis and Mrs. Griffin, and the deed made by Mrs. Davis and Mrs. Griffin on Nov. 11, 1912, conveying to Mrs. E. R. Holt, left them without any interest in said lot; that in consequence of Mrs. F. C. Brooks having conveyed her interest in the north half of said lot, it would be unnecessary to pass upon the question of whether the deed executed by Mrs. Davis and Mrs. Griffin on Feb. 5, 1913, was obtained through fraud, as, if they should prevail, they would still have no title or right of recovery; that T. L. Thigpen inherited from his grandfather, J. L. Thigpen, one twenty-fourth undivided interest in said lot of land; that he was entitled to recover the same, together with a twenty-fourth part of the $25,000 found by the auditor to be the reasonable value of the ore removed from the land, to wit, $1041.66; that the plaintiffs Amos, J. L., Judson, and A. J. Johnson were entitled to recover each a one-sixteenth interest in all of said lot of land except the northeast one-fourth consisting of fifty acres more or less, and each of them was also entitled to recover a one-sixteenth part of three fourths of the $25,000 found to be the reasonable value of the ore removed, or $1171.87; that the defendants Hatton and Republic Mining & Manufacturing Company were jointly liable to the plaintiffs for the respective amounts found on account of ore removed; that said lot of land cannot be equitably partitioned, and should therefore be sold, each

of the plaintiffs to receive a share in accordance with the ratio above mentioned, the balance to go to the defendant Hatton after payment of the amounts found to be due as mesne profits.

Hatton moved to recommit the case to the auditor, which motion was overruled. Mrs. Davis and Mrs. Griffin moved that the case be recommitted to the auditor for a supplemental report. All of the parties filed exceptions to the findings of fact and of law as made by the auditor. Hatton and the Republic Mining & Manufacturing Co. sued out a bill of exceptions on Feb. 23, 1923, in which Hatton assigns error on exceptions taken pendente lite to the overruling of his demurrers; upon the overruling of his motion to recommit the case to the auditor; and upon the overruling of his exceptions to the findings of fact and of law. Republic Mining & Manufacturing Company assigns error upon the allowance of the amendment to the plaintiffs' petition, which prayed a recovery from it on account of ores mined; and also upon the overruling of its exceptions to the findings of fact and of law.

The bill of exceptions sued out by Mrs. Davis and Mrs. Griffin, on March 6, 1923, assigns error upon the overruling of a motion made by them to require a supplemental report, or that the case be recommitted to the auditor; and also upon the overruling of their exceptions to the findings of fact and of law as made by the auditor, and the decree of the court confirming the report of the auditor. The bill of exceptions sued out by the plaintiffs J. L. Johnson et al., on March 6, 1923, assigns error upon the overruling of their exceptions to the findings of law and of fact as made by the auditor, and upon the decree confirming the report of the auditor. The bills of exceptions of Davis and Griffin and Johnson et al. contain the following: "The defendants in said case, to wit, Richard D. Hatton and the Republic Mining and Manufacturing Company, having heretofore filed their bill of exceptions in said cause, in which . . they specify as material certain parts of the record that plaintiffs in error herein consider material to a clear understanding of the errors complained of and assigned in this their bill of exceptions, but do not specify such parts because of the fact that they have already been specified and carried up in the bill of exceptions as filed by the said Richard D. Hatton and the Republic Mining and Manufacturing Company aforesaid. Said parts of the record that are not so specified,

but are material for plaintiffs in error herein and to which they pray to make reference, are as follows" (setting them out). Hatton moved to dismiss each of these writs of error, upon the following grounds: (a) Some of the plaintiffs below (J. L. Johnson et al.) having recovered judgment against Hatton and Republic Mining & Manufacturing Co., the trial of the case resulting in one final decree covering all the issues, the first bill of exceptions thereto having been presented by Hatton and the mining company, the plaintiffs below could not go by direct bill of exceptions to the Supreme Court, and the remedy of the plaintiffs below was by cross-bill of exceptions. (b) Upon the signing of the writ of error sued out by Hatton and the mining company the court below lost jurisdiction of the case, and could not deal with it further so far as certifying another direct bill of exceptions. (c) The law relating to carrying cases to the Supreme Court was not complied with, in that the plaintiffs did not specify or incorporate as parts of the record their original petition, amendments, answers of the defendants, demurrers to the petition as amended, auditor's report, and the final decree, but merely referred to the bill of exceptions of Hatton and the mining company wherein these records were incorporated.

*John P. Ross, Hal Lawson, W. W. Dykes,* and *Wallis & Fort,* for Hatton et al.

*Eldridge Cutts, Jule Felton* and *J. A. Hixon,* contra.

GILBERT, J. 1. Plaintiffs in error in the main bill of exceptions complain that the court erred in refusing to recommit the said case to the auditor. One ground of the motion to recommit was that the auditor found that Amos Johnson, Dr. J. L. Johnson, Judson Johnson, and A. J. Johnson "were entitled to recover each an undivided sixteenth interest in the lot of land in dispute, except in the northeast corner thereof; and further found as a matter of law that they were entitled to recover an undivided sixteenth interest each in the mesne profits of said lot excepting the said northeast quarter. The evidence disclosed that there were twenty-five thousand tons of ore mined by the Republic Mining and Manufacturing Company from the whole of said lot. It did not appear from the evidence upon what part of said lot said twenty-five thousand tons of ore were mined. The said plaintiffs undertook to recover upon the basis of approving the lease made

to the said mining company and receiving their portion of the lease money. The lease money to be paid was $1 per ton for each ton mined. It did not appear that the ore was mined equally from each quarter of the lot, but did appear that different quantities were taken from different parts of the lot and that none was taken from the southeast quarter." We think the court erred in refusing to recommit the case to the auditor, at least on the ground named in the paragraph of the motion to recommit above quoted. The auditor did not find, nor did the evidence brought up in the record authorize a finding, as to what quantities or proportions of ore were taken from the several quarters of the lot of land. The amount, therefore, of the recovery for each of the plaintiffs mentioned was arrived at by an arbitrary method. In order to find the specific sums for each of these plaintiffs, the auditor assumed that each of these plaintiffs was entitled to a one-sixteenth interest in the amount of money paid to Hatton as a royalty, regardless of what portion of the lot as a whole the ore was taken from. The auditor found that the plaintiffs had no interest in the northeast corner of the lot, because their ancestor from whom they inherited had previously to her death conveyed her interest in that quarter of the lot. It might be that a relatively small proportion of the ore was taken from the northeast corner. Nevertheless the auditor found that these plaintiffs were entitled to recover on the theory that the proportions of ore taken from the four quarters of the lot were equal. The auditor should have made a finding as to the quantity of ore or the proportions taken from the several quarters, and especially the northeast quarter, in which the Johnson heirs had no interest; this finding being a necessary element in arriving at the actual amount of money found to be due the plaintiffs. This ground of the motion to recommit was meritorious, and the court erred in overruling it. The second ground of the motion to recommit involved the same principles, and requires no additional ruling.

2. Another ground of the motion to recommit was based on the contention that the auditor failed to report a finding in respect to the amount of income tax paid by defendant Hatton on account of the $25,000 received by him as royalty on the ores mined, it being contended that the amount of this income tax so paid was $3076.00. This ground of the motion to recommit is

without merit. Considered on the theory as found by the auditor, that defendant Hatton was not entitled to receive the whole of the $25,000 paid as royalty by the mining company, but that on the contrary there were other persons owning an interest in the land and entitled to portions thereof, the defendant Hatton is not entitled to be reimbursed for the amount of taxes paid out by him because of his illegal receipt of profits belonging to others interested with him as part owners of the land. If the royalties had been paid to the rightful owners by the mining company instead of paying the entire amount to Hatton, the amount of income tax due the Federal Government would probably have been a sum less than that paid by Hatton, because of the provisions in the Federal income-tax act providing that the same be graduated. Some of the portions of such profits might have been less than the exemption allowed, under the provisions of the Federal income-tax law, to the persons rightfully entitled thereto. He is not entitled to be reimbursed unless the evidence shows that the parties recovering the property would, under the income-tax act, have been liable to pay an income tax upon the fund received by them; and this was not shown.

3, 4. Headnotes three and four do not require elaboration.

5. The defendant Hatton excepted to the finding of fact of the auditor as follows: "I find that there has never been any division or partition of lot No. 214 in the 28th district of Sumter County, Georgia, between Mrs. Brooks, Mrs. Johnson, A. N. Thigpen, and Dr. J. L. Thigpen, the heirs at law of Joshua M. Thigpen and Mrs. Nancy Thigpen." The court overruled this exception and entered a final decree in accordance therewith, and Hatton assigns error thereon. The evidence on the question of a division or partition between the heirs named does not leave the question free from doubt. One of the heirs, A. N. Thigpen, testified on the question favorably to the contentions of the defendant Hatton, but due to the infirmity of age his recollection was so indistinct and in some respects indefinite and contradictory that his testimony cannot be regarded as absolutely controlling on the issue as to whether there was a division. In no instance did any of the deeds produced on the trial purport to be executed to any one of the heirs at law by all of the other heirs at law, so as to give any one heir the entire interest in a specific part of the lot. The

testimony of all other witnesses on the subject of partition was exceedingly vague and indefinite, and generally they possessed no actual knowledge on the subject. Witnesses had seen the land when it was occupied by one Hudson many years ago, but after Hudson moved away the houses were burned and the place was allowed to grow up, and there was never any visible sign of a division or partition. Whether the evidence would have authorized a finding by the auditor that the heirs had perfected an informal partition of the land it is not necessary for us to decide, and we therefore express no opinion. What we do hold is that there is sufficient evidence to support the finding of the auditor to the effect that there was no partition; and such being the case, the court did not err in overruling the exception to that part of the auditor's finding.

6. The Republic Mining & Manufacturing Company filed a plea denying the jurisdiction of the court as to itself. The auditor found against the plea, and the company excepted to the auditor's finding that "at the time of the filing of the original petition in this case this defendant had an office and a manager in charge of same, to wit: W. T. Waters, in Sumter County, Georgia." That defendant contended that "W. T. Waters was not an officer of the Republic Mining & Manufacturing Company; that said company was engaged in mining bauxite on lands, which were owned in some cases by itself and others by other persons, situated at various places in Georgia and several other states; and that said company mined bauxite on the lands of other persons, as in Sumter County, Georgia, by virtue of leases from the owners of the various tracts of land, granting to said company the right and privilege to mine bauxite for and in consideration of a royalty paid to the owners of said lands by said company, as was the fact in reference to said company's operations on lands involved in this case in Sumter County, Georgia; that Waters was merely an employee of said company, engaged by it to manage its work of mining bauxite in Sumter County on the lands in controversy; that he made his reports directly to the company and was subject to directions from the company; that he was merely a salaried employee, and his duties were confined to the directing and superintending the work of mining and shipping bauxite in Sumter County for said company; and that he had no authority or right

to accept service of any process for said company." There is no claim made that service was not made on the company, if it be assumed that the superior court of Sumter County could acquire jurisdiction by proper service. In our opinion the auditor did not err in finding against the plea to the jurisdiction. Civil Code (1910), § 2259 is applicable in such a case. It declares: "Any corporation, mining, or joint-stock company, chartered by authority of this State, may be sued on contracts in that county in which the contract sought to be enforced was made or is to be performed, if it has an office and transacts business there. Suits for damages, because of torts, wrong or injury done, may be brought in the county where the cause of action originated. Service of such suits may be effected by leaving a copy of the writ with the agent of the defendant, or if there be no agent in the county, then at the agency or place of business." Compare *Tuggle* v. *Enterprise Lumber Co.*, 123 *Ga.* 480 (51 S. E. 433) ; *Central Ry. Co.* v. *Alford*, 154 *Ga.* 863 (115 S. E. 771).

7. The Republic Mining & Manufacturing Company excepted to the sixth conclusion of law by the auditor, "which finds that this defendant, as a matter of law, is jointly liable for the amounts of mesne profits which he finds the plaintiffs are entitled to recover; and says that said conclusion of law, that this defendant is jointly liable with Richard D. Hatton to plaintiffs, is contrary to evidence, and without evidence to support it, and contrary to the findings of fact reported by the auditor, and contrary to the findings of fact set forth in the tenth and eleventh subdivisions of the auditor's findings of fact, and contrary to and not authorized by the facts set forth in the fifth and sixth subdivisions of his conclusions of law. And this defendant further says that this conclusion of law, to wit, that this defendant is jointly liable with Richard D. Hatton to plaintiffs for mesne profits, is not authorized by the averments of fact contained in the original petition of the plaintiffs nor by the prayers of said petition, and for that reason is contrary to law and is without pleadings to support it. And it appearing from the evidence and the report of the auditor in his findings of fact numbered tenth and eleventh, that this defendant. paid to Richard D. Hatton, in good faith, the sum of twenty-five thousand dollars on January 29th, 1917, without notice of the claims of the plaintiffs, and that said sum was in full payment of

all the ore mined by this defendant, and that said payment was made without notice or knowledge of the claims of the plaintiffs, and before the petition in this case was filed, the said conclusion of the auditor, numbered sixth, that this defendant is jointly liable with Richard D. Hatton to the plaintiffs for the amounts of mesne profits which the plaintiffs are entitled to recover, is contrary to law, and contrary to evidence, and without evidence to support it." Under the pleadings in the case the auditor was not authorized to find a judgment for mesne profits against the mining company jointly with the defendant Hatton. Properly construed, the petition sought to recover from the mining company jointly with Hatton the amount paid as royalty, or such portion thereof as should have been paid to the plaintiffs. The petition, as originally filed, prayed, as against the mining company, that it be enjoined from paying Hatton any of the proceeds of the mining done on the land, and expressed a willingness that the lease made to the mining company be allowed to stand; but claimed that the money should be impounded in the hands of a receiver, and that Hatton be required to account for the money paid him, as plaintiffs are unable to ascertain the amount thereof. The case came to this court on exceptions to a judgment overruling demurrers to the petition. This court held that there was no ground for the appointment of a receiver, and that there was no necessity for the grant of the injunctive relief sought. As originally filed the petition did not otherwise pray for mesne profits or other money judgment against the Republic Mining & Mfg. Co. As construed by this court, therefore, the plaintiffs' petition was not sufficient to set out a cause of action praying for any substantial relief against the mining company. The petition expressly disclaimed any desire to eject the mining company from the land, but on the contrary in terms alleged its desire that the mining company continue in possession of the land for the purpose of carrying on its mining business, and elected to share with Hatton in the profits arising out of his contract with the mining company. Subsequently to the decision in this court the plaintiffs amended their petition by adding to the prayer for mesne profits against Hatton a prayer for the recovery of mesne profits against the mining company "for all ore mined from said premises within four years prior to the filing of this suit." The plaintiffs do not impute wrongful conduct of any

kind or character to the mining company. As stated above, they welcome the presence of the mining company as offering remuneration and profits to the plaintiffs by the continuance of the mining operations. The claim of plaintiffs is merely to a proportion of the profits paid by the mining company to Hatton. The plaintiffs could not recover on a contract by the mining company with Hatton in which they were not parties, although that is what the plaintiffs seek to do, according to their allegations. *Copelin* v. *Williams,* 152 *Ga.* 692 (111 S. E. 186).

8. Cross-bills of exception were filed by J. L. Johnson et al., and by Mrs. Amie Davis et al. Motions to dismiss these bills of exceptions were filed in this court, on the grounds, first, that these plaintiffs in error could not sue out independent writs of error to the Supreme Court of Georgia; that cross-bills only could be filed; second, that the judge of the superior court having previously signed and certified the bill of exceptions of R. D. Hatton and the Republic Mining & Manufacturing Company, the power of the court to deal with the case was exhausted; third, that plaintiffs in error, Johnson et al. and Davis et al., failed to incorporate in their bills of exceptions or to specify parts of the record necessary for a consideration of the case, but only made reference to such parts of the record so specified by Hatton and the mining company in their bill of exceptions. There is no merit in the motion to dismiss on any of the grounds thereof. We construe the exceptions of Johnson et al. and Davis et al. to be cross-bills of exceptions authorized under the Civil Code (1910), § 6148. As such the same may refer to parts of the record specified by Hatton and the mining company in the main bill of exceptions.

9. J. T. Johnson et al. in their cross-bill assign error on the judgment overruling exceptions of law and fact found by the auditor, as follows: "I find that on September 3rd, 1889, Mrs. J. T. Johnson deeded to A. N. Thigpen the northeast corner of this lot" (referring to lot No. 214 in the 28th district of Sumter County, being the lot in litigation). The description of the land contained in that deed was as follows: "Northeast corner of lot of land No. 214 in the 28th district of originally Lee, now in the 29th district of Sumter County, Georgia, containing 50 acres, more or less." It will be observed that this description on the face of the deed refers to land "now in the 29th district of Sumter County," where-

as the land in litigation is in the 28th district of Sumter County. The lot number and the district of Lee County are the same in the deed as in the description of the land in litigation. There was evidence introduced before the auditor to the effect that there are no land lots in the 29th district of Sumter County which were formerly in the 28th district of Lee, but that all such lots formerly in the 28th district of Lee County which were transferred to Sumter County are now in the 28th district of Sumter. If this evidence is true, the two portions of the description, one mentioning lot 214 in the "28th district of Lee County," and the other "now in the 29th district of Sumter County," present an irreconcilable conflict. It is not disputed that Joshua M. Thigpen, the source from which the plaintiffs in this case claim their title, died seized and possessed of lot 214 in the 28th district of originally Lee County, now in the 28th district of Sumter County. There was also evidence from which the auditor would have been authorized to find that the same ancestor, at the time of his death, was residing on a lot known as 214 in the 29th district of Sumter County. But there was no sufficient evidence to show that he had ever acquired paper title to the last-named lot on which he died, although he was in physical possession of the same at the time of his death prior to and during the civil war. Moreover the evidence only authorized a finding that Joshua M. Thigpen resided on lot 29 for about two years and only gave the same in for taxes for about the same period. The weight of the evidence also showed that the taxes on lots of land situated in the 28th district of Sumter County were frequently entered on the tax digests under the heading of the 29th district. From all of which we conclude the finding of the auditor was authorized by the evidence. In addition to what has been said the court takes judicial cognizance of the fact, as found in the record of the office of the Secretary of State, that all lots of land in the 28th district of originally Lee County and now in Sumter County are in the 28th district of Sumter County, and that none of the lots originally in the 28th district of Lee County are now in the 29th district of Sumter. Since the auditor found, and was authorized by the evidence to find, that none of the land lots in the 28th district of Lee County are now in the 29th district of Sumter County, one of the two inconsistent parts in the deed must prevail and the other must be disregarded. In *Thompson* v.

*Hill,* 137 *Ga.* 308 (73 S. E. 640), at page 310 it was said: "In this State the rule as to repugnant clauses has been codified in section 4187 of the Code of 1910 thus: 'If two clauses in a deed be utterly inconsistent, the former must prevail; but the intention of the parties, from the whole instrument, should, if possible, be ascertained and carried into effect.' Out of this disposition to give effect to an instrument, where practicable, doubtless arose the maxim, 'Falso demonstratio non nocet cum de corpore constat' (mere false description does not vitiate, if there be sufficient certainty as to the object). Characteristic cases within the rule, as strictly applied, were those where the description, so far as it was false, applied to no subject, and, so far as it was true, applied only to one subject. But in pursuance of the current of modern authority above mentioned, it has become settled law that if the thing intended to be granted appears clearly and satisfactorily from any part of the description, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false and mistaken, although it would be possible to apply them to a subject-matter so as to enlarge or diminish the grant."

All other exceptions of law and fact filed by J. L. Johnson et al., the rulings on which are assigned as error in their cross-bill of exceptions, are controlled by what has been said immediately above and do not require further discussion.

10. The plaintiffs, Mrs. Amie Davis and Mrs. Mamie Griffin, filed a motion to require the auditor to make a supplemental report covering omitted issues; and also exceptions of law and fact to the auditor's report, which were overruled by the court and they assign error in their cross-bill. One ground of the motion to recommit for a supplemental report was as follows: "The auditor held (in the 16th finding of fact) that it was useless to pass on the issue raised by the attack of these petitioners upon a certain deed dated February 5th, 1913; this ruling being based on the ground that he had found that all the interest of petitioners' predecessor in title, Mrs. F. C. Brooks, has passed out by a certain deed made by Mrs. Brooks and A. N. Thigpen to Americus Preston & Lumpkin Railroad Company on July 13th, 1887, which deed he holds related to the lot of land involved in this litigation. These petitioners contend that the said deed made by Mrs. Brooks and Thigpen to said

railroad company, and which described the said land as follows: 'The north half of lot of land No. 214 in originally the 28th district of Lee County, now in the 29th district of Sumter County, and containing one hundred acres, more or less,' does not refer to the land now in litigation, but refers to a lot of the same number in the 29th district of Sumter County, and that this construction applies as a matter of law from the description on the face of the deed; but petitioners further contend that if such description does not mean as a matter of positive law to refer to the lot in the 29th district, then, under the evidence submitted and appearing in the brief of evidence filed by the auditor, he erred in not finding as a matter of fact that said deed meant and referred to said lot of land in the 29th district, there being a lot of that number in said district and on which lot in said 29th district Joshua M. Thigpen, the ancestor of these petitioners and the admitted common source of title of plaintiffs and defendants, died, and on which his family remained for a year after his death and which they continued to return for taxes for a number of years." The ruling on this question is controlled adversely by the decision above made on the cross-bill of J. T. Johnson et al. It follows that the court did not err for any reason stated in the motion of Mrs. Davis and Mrs. Griffin. The ruling here made also controls adversely to the plaintiffs in error, Mrs. Davis and Mrs. Griffin, the assignment of error on the overruling of the exceptions of law to the finding that these plaintiffs, Mrs. Davis and Mrs. Griffin, owned no interest in the lot of land in question, because the ancestor under whom they claimed had conveyed her interest to a third person prior to her death.

*Judgment, on the main bill of exceptions, reversed in part, and affirmed in part; on cross-bills, affirmed. All the Justices concur.*