## HOLT *v.* TATE.

No. 13858. NOVEMBER 13, 1941. REHEARING DENIED DECEMBER 2, 1941.

*Edward T. Hughes,* for plaintiff.    *Frank S. Twitty,* for defendant.

JENKINS, Justice. Some elaboration of headnote 6 seems proper. Taking the description of the land sued for as contained in the security deed, since it appears that the entire eastern boundary is described as being the original land line of lot 213, and since the southern boundary of the premises is likewise ascertainable as being the northern boundary of land belonging to Gee, the southeast corner of the conveyed premises is determined by the point where the northeast corner of Gee's land touches the original line of lot 213. From this starting point, following the northern boundary of Gee's land westward until the land of Williford is reached renders certain not only the southeastern corner and the southern line, but the southwestern corner. Then starting at the southwest corner as thus ascertained, and proceeding north along the Williford land line to a point sufficiently far, so that a straight line running east to the original land line would embrace 39 acres, would, except for the reason hereinafter stated, complete the description. Except for that reason later mentioned, this could be done; for, as was held in the similar case of *Moody* v. *Vondereau,* 131 *Ga.* 521 (2), 526 (62 S. E. 821), where the western, southern, and eastern boundaries were definitely fixed by the deed, "in the absence of a contrary intent appearing, the northern line of the land granted is to be located by a line drawn due east and west so as to cut from the larger tract the number of acres specified in the deed." Especially would this be true in the instant case, except for the reason to be stated, because if this northern line were not run due east and west, either the eastern boundary would not be made up entirely of the original line of the land lot, or else the western boundary would not be determined entirely by the land of Williford, and would thus contradict the terms of the security deed. See *Crosby* v. *McGraw,* 133 *Ga.* 560 (66 S. E. 897).

It appears, however, that such a northern boundary line running west to east so as to include thirty-nine acres as required by the security deed can not be established without contradicting other vital descriptive data given by the same deed, since it is a physical fact, which is shown to be true by the amendment to the petition, that such a northern line running from west to east so as to include the required thirty-nine acres would not strike the original land line of lot 213 at all, as would be required by the security deed, but would strike a church lot, and the land as thus surveyed

would not be bounded on the east entirely by the original land line of lot 213. Even were it possible to assume that, without any authority or key from the terms of the security deed, this northern line might be so run as to cut off forty acres, instead of the stated thirty-nine, and thus allow for the one-acre church lot, this too would be in contradiction of the explicit terms of the security deed, since the land thus segregated and set apart would be bounded on the east only partly by the original land-lot line and partly by the church lot, whereas the deed says that the eastern boundary, which means the entire eastern boundary, is the original land line of lot 213. Accordingly, the descriptive language given by the security deed is fatally deficient, and fails to afford the basis of a definite description; and not only is there no key for the aid pleaded in its support by the amendment to the petition, but the actual physical facts thus pleaded are in direct contradiction to the data embodied in the security deed itself, on which the plaintiff must rely.

While, as counsel for the plaintiff submit, it was said by this court in *McCaskill* v. *Stearns,* 138 *Ga.* 123, 126 (74 S. E. 1032), that "a deed will not be held void for uncertainty from the fact that the description in part is false or incorrect, if there are sufficient particulars given to enable the premises intended to be conveyed to be identified," this rule does not seem applicable here, as it was in that case. In the *McCaskill* case, the ruling was as follows: "Early County was laid out by virtue of an act approved December 15, 1818, which provided that its territory should be laid off into districts, and subdivided into lots of 250 acres each. Decatur County was formed from Early County in 1823, and embraced the 15th district; and Baker County was formed from Early County in 1825, after Decatur County was carved out of it. A deed executed in 1842, conveying 'those tracts or parcels of land being in the County of Baker, formerly Early County, as follows: in the 15th district, lots . . 76, 77, 90, 83, 84, . . each lot containing 250 acres, more or less,' is to be construed as conveying the lots in the 15th district of Decatur, formerly Early County. The statement, the 'land being in the County of Baker,' is matter of general description, and must yield to the more particular description in the deed, which locates the land in Decatur County." In that case the deed by its own terms admittedly gave sufficient

particulars to enable the premises conveyed to be definitely identified. To this complete, precise, and definite description of lands which formerly lay in Early County was added the incorrect statement that they lay in Baker County, whereas they in fact lay in Decatur County. This court merely applied the rule that it would "take judicial notice of the boundaries and the relative location of its various counties, as originally laid off; of the governmental survey of its territory, where the same was, agreeably to lawful authority and direction, divided into districts, each containing land lots of a given shape and size, designated by numbers; and also of the effect of all legislative enactments creating new counties and fixing the boundary lines thereof." *Stanford* v. *Bailey*, 122 *Ga.* 404 (50 S. E. 161). Applying this rule, it was definitely ascertainable that the lots conveyed, being formerly in Early County, must necessarily, at the time the deed was executed, have been located in Decatur and not in Baker County. This being true, under the rule that general description must give way to more particular description, this court held that the particular description, which showed that the land lay in Decatur County, would prevail over the mere general statement that it lay in Baker County. Here, in the instant case, there is no description at all contained in the security deed, such as would identify or furnish a key to any definite parcel of land which the physical facts actually existing and as set forth by the amendment to the petition would permit. This amendment was not harmful to the plaintiff's case. It merely gave a correct preview of a situation which would inevitably arise under the evidence in seeking to work out any definite identification in accordance with the terms of the deed and the physical lay of the land. Since the physical facts, as shown by the amendment, do not permit the identification which the amendment seeks to set up, but since on the contrary, the amendment shows that the land sought to be recovered can not be thus identified without positively contradicting the express terms of the deed relating to the one and only possible description which it is claimed the deed supplies the key to, it follows that the deed must be held invalid.

*Judgment affirmed. All the Justices concur.*